UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | DOCKET NO. 24-CR-10001-LTS |
| ) | |
| AIZAVIER ROACHE ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

**I.      Introduction**

Aizavier Roache is 31 years old, facing his first federal offense as well as the longest sentence of his life. The probation department believes that the advisory guideline range in this case is 57-71 months, PSR ¶ 108, but that calculation incorrectly relies on an enhancement for additional firearms that have not been sufficiently proven against Mr. Roache. Instead, the correct advisory range based on the six firearms which have been proven is 37-46 months. See Defendant's Objection #2.

Mr. Roache fully admits that he committed a serious offense which calls for a serious sentence. A determination of a sentence that is "sufficient, but not greater than necessary" requires consideration of both the correct advisory range as well as all the statutory sentencing factors of 18 U.S.C. 3553(a). In this case, there are no factors that would justify an upward variance beyond the advisory range. Even if the Court were to agree with the probation department's calculation of the advisory range, any sentence longer than 46 months would certainly be longer than necessary. Instead, a sentence of 46 months followed by two years supervised release is a sentence that is "*minimally* sufficient to achieve the broad goals of sentencing." *United States v. Rodriguez,* 527 F.3d 221, 228 (1st Cir. 2008) (emphasis added).

1

II. **Aizavier Roache should be punished based on the number of firearms which have been proven by a preponderance of the evidence.**

Mr. Roache has pled guilty to the six firearms listed in the Indictment. Dkt. 1. He agrees that he purchased those guns from the codefendant straw purchaser and then transferred them to others between January and August 2023. PSR ¶¶ 14-25.

However, the probation department has assessed a six-point enhancement that only applies when the offense involves 25 or more firearms. PSR ¶ 38. Probation has given two different reasons for applying that enhancement. One is reliance on the codefendant's statement that he sold 24 guns to Mr. Roache before the six that are charged in the Indictment. PSR¶¶ 9, 38. The second reason was given in response to Mr. Roache's objection to the Presentence Report and instead relies on the government's claim that the codefendant purchased at least 46 firearms in South Carolina since 2020. Probation Officer's Response to Objections #1 and #2, PSR p. 35. As to this claim, the probation officer wrote: "There is no evidence that [codefendant] was providing any individual other than the defendant with firearms." Id.

Probation's reasons in assessing a six-point enhancement against Mr. Roache are contradictory, unsupported, and do not establish a preponderance of evidence. First, there is insufficient evidentiary support for the codefendant's claim that he purchased 24 firearms for Mr. Roache before 2023. PSR ¶¶ 9, 38. Agents know that the codefendant in fact purchased a total of 46 firearms. PSR ¶ 12. Yet probation relies on the false inference that there is no evidence that the codefendant purchased firearms for anyone besides Mr. Roache. The inference that every gun the codefendant purchased went to Mr. Roache is false because it is clear that either the codefendant gave false information about the number of firearms he provided to Mr. Roache or about whether he provided firearms to anyone else. Because of this obvious discrepancy, the

2

codefendant's statements are certainly not reliable enough to prove that either an additional 24 or 46 firearms went to Mr. Roache by a preponderance.

Furthermore, probation has improperly shifted the burden of proof to Mr. Roache. Enhancements must be supported by a preponderance of the evidence. USSG 6A1.3, Commentary. Thus, there must be a preponderance of actual evidence that additional guns besides the six charged in the Indictment went to Mr. Roache. By definition, an absence of evidence about where the firearms went does not establish a preponderance.

Because the information before the Court does establish by a preponderance that more than the six guns in the Indictment were involved, the Court should apply a two-point enhancement under 2K2.1(b)(1). With that two-point enhancement, rather than the six incorrectly assessed by probation, the total offense level should be 17 rather than 21. Mr. Roache agrees that he is in Criminal History Category IV. The advisory range at level 17 in Category IV is 37-46 months. Should the Court determine that there is a preponderance of evidence that at least eight but less than 25 firearms went to Mr. Roache, then a four-point enhancement would apply, resulting in a total offense level of 19 and an advisory range of 46-57 months. Only if it is proven by a preponderance that Mr. Roache was involved with 25 or more firearms would the six-point enhancement apply, resulting in an offense level of 21 and an advisory range of 57-71 months.

**III.     A 46-month sentence would be a life-changing event for Mr. Roache and thus be an appropriate intervention in patterns of behavior that date back to his childhood.**

Aizavier Roache was born in Boston in 1992. PSR ¶ 72. His parents were never married, and they separated when he was young. PSR ¶ 73. Although his mother and her family provided as much love and support as they could, the absence of his father was the defining factor in his life.

His father was in and out of prison, and young Aizavier never understood why. Id. Even when not incarcerated, his father was not involved Aizavier's life. Id. Aizavier became aware of his father's addiction at approximately age 13. Id. Ultimately that addiction led to his father's death from an overdose in 2016, when Aiziavier was 24 years old. Id.

Aizavier's mother believed that his father's absence led Aizavier to seek approval from older males in the neighborhood. PSR ¶ 73; Exhibit A, Letter of Nancy Hammond. But that need for validation was complicated by other challenges Aizavier faced as a child. He suffered from a learning disability and received specialized services in school, making success there more challenging. He also was picked on by the children in his neighborhood for his weight and a speech impediment. PSR ¶ 90.  Exhibit A, Letters of Nancy Hammond, Velma Keyton, Lisa Dillahunt. All of these issues contributed to Aizavier having very low self-esteem as a child. Id.

Unfortunately the neighborhood was not a good place for Aizavier to receive positive affirmation. He grew up in the lower Roxbury/South Ed of Boston. PSR ¶ 74. His mother describes it as a neighborhood "filled with drugs and crime." Exhibit A, Letter of Nancy Hammond. Because he "latched on to people in the streets," PSR ¶ 73, he started using alcohol and marijuana when he was 12. PSR ¶ 91. He was first charged with a crime when he was 17, PSR ¶ 51, and he has relatively consistent contact with the courts since.

Yet the case at hand presents far more serious consequences than Mr. Roache has faced in the past. The longest sentence he has received in his life was 12 months in a state facility. PSR ¶ 56. Having pled guilty, Mr. Roache now recommends a sentence nearly four times as long- 46 months in a federal prison. The amount of the increase alone accomplishes important sentencing goals such as deterrence and promotion of respect for the law. 18 U.S.C. 3553(a). A four-year sentence is far different than one year. It interrupts the patterns and social contacts Mr. Roache

was engaged in that got him here in the first place. It will give him plenty of time to reflect on his choices and consider new ones for a better future. These are all reasons why 46 months is sufficient, particularly because it is such a great increase over any prior sentence.

### IV.     Mr. Roache has strong family support and opportunities for a better future.

Despite the challenges he has faced and the poor choices he has made, Aizavier Roache has the skills, support, and opportunities that he will need to make a better life for himself, and in turn for his young son. Although his father's absence, incarceration, and addiction all had serious effects on his life, the love and support of his mother and her family taught him skills, including resiliency. His mother, two aunts, and three cousins have all written letters of support for him. Exhibit A. They uniformly describe him as kind, loving, and hard working. Id. Examples of his hard work in the face of challenges can be found in the Presentence Report as well. Despite his learning disabilities and not completing high school he obtained a GED. PSR ¶ 93. He also has a strong work history. For the 10 years from 2014 until his arrest he was employed steadily except during the first two years of the COVID-19 pandemic. PSR ¶¶ 96-103.

Mr. Roache is motivated to return to gainful employment upon release so that he can provide for his two-year-old son. PSR ¶ 82. He would very much like to interrupt the cycle of paternal abandonment that was so devastating for him. Exhibit A, Letters of Nancy Hammond, Velma Keyton. His stepfather has offered to assist him in obtaining his CDL license and employment as a truck driver. PSR ¶ 94. Mr. Roache has described his mother's relationship with his stepfather as "a perfect love story" and notes that he would like for the two of them to be closer. PSR ¶ 76. This would be a perfect opportunity to help Mr. Roache heal some of his own wounds and learn how to prevent inflicting similar ones on his own son.

The harm done to children of incarcerated parents is not just anecdotal, but a proven fact. Experts have noted the profound effects on children of losing a parent to jail: "Associated sociological and criminological theories point to three prominent ways in which the effects of parental imprisonment on the social capital of children might be understood. These involve the strains of economic deprivation, the loss of parental socialization through role modeling, support, and supervision, and the stigma and shame of societal labeling." John Hagan and Ronit Dinovitzer, "Collateral Consequences of Imprisonment for Children, Communities, and Prisoners" Crime and Justice, vol. 26 (1999), 121-162, 123. "The financial difficulties and loss of a parent precipitate a range of emotional and psychological problems that affect these children, including educational failures, aggression, depression, and withdrawal." Id. at 137-138. Government-sponsored studies have for many years recognized the need for alternatives to incarceration that minimize the damage suffered by children, reduce recidivism, and increase family preservation. Ross D. Parke & K. Alison Clarke-Stewart, Effects of Parental Incarceration on Young Children (Dec. 2001) (commissioned by U.S. Dept. of Health and Human Services as part of its From Prison to Home: The Effect of Incarceration on Children, Families and Communities project); Child Welfare League of America, Parents in Prison: Children in Crisis (1997).

The negative consequences of the incarceration of Aizavier's father are particularly clear in this case because of the differences in outcomes for him and his brother who is only younger by one year. Despite growing up in the same family, Mr. Roache's brother had a different father who was involved in his life. PSR ¶ 75. Both Mr. Roache and his mother saw hard it was not only for him to be without his father, but to watch a sibling get the attention he wanted and needed so badly. Id. The two boys had similar experiences in many ways, but this crucial

difference led to very different outcomes. That experience motivates Mr. Roache to do the hard work of making change.

V.  **Conclusion.**

As argued above, the advisory guideline range in this case, based on the evidence available to the Court and the preponderance standard, are 36-47 months. Mr. Roache's recommendation of 46 months is thus very close to the high end of the range, which is in recognition of the harm that others perpetrated with firearms that he distributed. Forty-six months is also the low end of the range that would result if the Court found that there was a preponderance of evidence that the offense involved between 8 and 24 firearms and applied a four-point enhancement rather than the two advocated by the defense for 3-7 firearms and the six advocated by probation for 25-99 firearms. If the Court did adopt probation's recommended calculation, then forty-six months would be a modest downward variance from the advisory range of 57-71 months.

The defense submits that based on the specific facts of this case and of Mr. Roache that 46 months and two years supervised release is the appropriate sentence regardless of the final guidelines calculation. That is because it takes into account the guidelines as well as the nature and circumstances of the offense and the history and characteristic of Mr. Roache. The seriousness of the offense calls for a serious response. Forty-six months in federal prison is sufficiently serious because it will be a life-changing event for all the reasons argued above. For all those reasons, a forty-six month sentence will accomplish the statutory purposes of 18 U.S.C. 3553(a).

AIZAVIER ROACHE
By his Attorney,

*/s/ Joshua Hanye*
Joshua Hanye, BBO#661686
Assistant Federal Public Defender
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

**Certificate of Service**

I, Joshua R. Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: February 3, 2025                    */s/ Joshua R. Hanye*
                                           Joshua R. Hanye